# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**SAMUEL YOUNG**      **PLAINTIFF**

**v.**      **No. 4:23CV221-JMV**

**MSP PARCHMAN STATE PRISON, ET AL.**      **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Samuel Young, who challenges the conditions of his confinement under 42 U.S.C. § 1983 – which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit.[1] The plaintiff alleges that on April 21, 2023, he was attacked by the defendant and three inmates while out of his cell and on the phone. Doc. 1, p. 5. The plaintiff claims that, before the assault, he was on a call with his attorney. *Id.* The plaintiff further alleges that the defendant and an offender assaulted him and, with the help of two other offenders, forced him into his cell. *Id.* The plaintiff claims that, as a result of the assault, he has suffered neck and back pain. *Id.*

The defendant has filed a motion [29] for summary judgment, arguing that the plaintiff did not exhaust his prison administrative remedies before filing suit. The plaintiff has responded [34] to the motion, and the parties have submitted additional briefing. The plaintiff has also filed a document styled as a motion [32] for summary judgment, arguing that he exhausted his administrative remedies

---

[1] *See* 42 U.S.C. § 1997e(a); *see also Williams v. Henagan,* 595 F.3d 610 (5th Cir. 2010) (PLRA applies when inmate is incarcerated at the time he files suit, even if he was released during pendency of suit).

because he "did file a g[r]ievance." He filed a second motion [36] for summary judgment, arguing that the court should enter judgment in his favor because the defendant did not provide him with videos or photographs related to the alleged assault.

Briefing is complete, and the matter is ripe for resolution. For the reasons set forth below, the plaintiff's motions [32], [36] for summary judgment will be denied; the defendant's motion [29] for summary judgment will be granted, and the instant case will be dismissed without prejudice for failure to exhaust administrative remedies.

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

### The Plaintiff's Motions [32], [36] for Summary Judgment

The plaintiff's motions [32], [36] for summary judgment will be denied. As to Young's first motion [32] for summary judgment, the mere submission of a prison grievance does not constitute exhaustion of administrative remedies under the PLRA – a point made clear in the discussion of exhaustion immediately below. Neither is the plaintiff entitled to summary judgment [36] based upon the defendant's alleged failure to provide discovery in the form of videos and photographs. The defendant filed a "Notice of Service of Inmate Documents," which states that he provided the plaintiff with ARP documents, the relevant parts of his institutional record, and his relevant medical record excerpts. Doc. 35. Though video and photographic evidence might shed light on the *merits* of the

plaintiff's allegations, as discussed below, this case will be decided on *procedural* grounds. As such, the discovery the plaintiff seeks is not relevant to the outcome of this case, and the alleged discovery violation is not a ground for the court to grant judgment in the plaintiff's favor. For these reasons, the plaintiff's motions [32], [36] for summary judgment will be denied.

### Exhaustion of Administrative Remedies

As discussed below, the plaintiff did not exhaust the prison grievance process before filing the instant case, as required under the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. §1997e(a). Congress meant for the exhaustion requirement to be a tool to help weed out the frivolous claims from the colorable ones. *Jones v. Bock*, 549 U.S. 199, 203 (2007). The PLRA requires prisoners to exhaust any available administrative remedies before filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "*proper* exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006) (emphasis added); *see also Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement) (*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty. Med. Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan. 11, 2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules").

The requirement that § 1983 claims be exhausted prior to filing a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As

"exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. A prisoner should face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford, supra*, at 95.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its correctional facilities. The Mississippi Department of Corrections has thus set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a complaint or grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994). *See also Marshall v. Price*, 239 F.3d 365, 2000 WL 1741549, at *1 (5th Cir. 2000). An inmate must complete two steps to exhaust the ARP process. *See Gates v. Barbour*, No. 4:71CV6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010); *Threadgill v. Moore*, No. 3:10CV378-TSL-MTP, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).

The inmate may initiate the two-step ARP grievance process by submitting his allegations in writing to the prison's Legal Claims Adjudicator within thirty days of the incident.[2] *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator

---

[2] If an inmate is found guilty of a prison rule violation, he may appeal that finding through the ARP process. Inmate Handbook, Section VIII, Paragraph XI. However, the appeal of a rule violation through the ARP is a one-step process (in contrast to the two-step process for resolving grievances). *Id*.

initially screens the complaint and determines whether or not to accept it into the ARP process as a grievance. *Id.* The screening phase thus operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances. As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra.* Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of prison grievance process). However, if the defects in the original grievance were minor ("technical" or "matters of form") an inmate may submit a corrected grievance within five days of the rejection:

> If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf (last visited April 3, 2019)).

If accepted as a valid grievance, the complaint is forwarded to the appropriate official who then issues a First Step Response to the complaining inmate.[3] *Id.* If the inmate is unsatisfied with the First Step Response, he may continue to the Second Step by completing the appropriate ARP form and

---

[3] The submission and screening of the plaintiff's complaints do not constitute the beginning of the ARP process. Instead, the ARP grievance process begins when the inmate's submission is "accepted" as a grievance *after* initial screening. Inmate Handbook, Chapter VIII, Paragraph IV(H).

sending it to the Legal Claims Adjudicator. *Id.* The Superintendent, Warden, or Community Corrections Director will then issue a final ruling (the Second Step Response) – which completes the ARP process.[4] *Id.* If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id.*

### Undisputed Material Facts Regarding Exhaustion of the Grievance Process

Samuel Young submitted two ARP grievances related to the April 21, 2023, assault. *See* Exhibit "A," Affidavit of Cornelius Cox - ARP MSP-23-553.[5] The first grievance, dated April 26, 2023, was received by the MSP Inmate Legal Assistance Program ("ILAP") on May 16, 2023. *Id.* The ARP rejected this complaint because Young sought monetary relief – which is outside the scope of the relief available under the ARP. *Id.* Young signed for receipt of the rejected ARP grievance on May 22, 2023. *Id.*

The second grievance is dated May 14, 2023 (before the date Young signed for receipt of the rejection of his first grievance). *See* Exhibit "B," Affidavit of Cornelius Cox and Correspondence. That grievance was rejected because it requested the firing of an MDOC (which is not a form of relief available through the ARP) – and because the grievance contained multiple requests for relief (which

---

[4] The grievance process will also be deemed complete if more than 90 days elapses from the beginning of the process (acceptance of the grievance after screening) without issuance of a Second Step Response Form (the normal way to complete the grievance process). Inmate Handbook, Chapter VIII, Paragraph VIII(A). In the absence of a response in a step of the ARP process, the inmate may not simply wait for the 90-day deadline to expire. *Id.* Instead, for each step without a response, he must wait until the deadline for a written response for that step expires, then move to the next step in the process. *Id.* If the inmate has submitted the proper forms for each step, yet 90 days elapses without issuance of a Second Step Response Form, then he has completed the grievance process and may seek relief in State or Federal court.

[5] The exhibits referenced in this memorandum opinion may be found attached to the defendant's Motion for Summary Judgment.

- 7 -

is not permitted under ARP rules). *Id*. At the time the ARP received the second grievance, staff had not processed Young's first grievance requesting monetary relief.

He never submitted an amended grievance regarding the alleged assault. *Id.* Instead, he filed suit in this court on November 20, 2023. Doc. 1. On June 22, 2024, nearly seven months after filing suit, Young submitted the third ARP grievance regarding the alleged assault, stating that he had not heard anything regarding his previously filed grievances in 2023. Doc. 29-2, p. 5. In response to the 2024 grievance, on July 2, 2024, the ARP provided Young with a copy of his signed rejection notice and letter dated May 22, 2023. Doc. 29-2, p. 4. Young did not raise this matter with the ARP again. *Id.*, p. 1. He never completed the second step of the ARP process as to the alleged assault before filing suit on November 20, 2023.

### Rejected Grievances

In the instant case, Young did not complete the prison grievance process before filing the instant suit because, though he submitted two complaints regarding the incident to the ARP for processing, those complaints were rejected for procedural reasons.[6] He did not correct the procedural defects; as such, he did not pursue the grievance process to completion as to the alleged assault.[7] As set forth above, the submission of a procedurally defective grievance does not satisfy the PLRA's exhaustion requirement. *See Woodford, supra* and *Johnson, supra.* Hence, as Young's two complaints were rejected, "he never actually began the grievance process." *Telford v. King*, No. 3:18-CV-507-DPJ-FKB, 2019 WL 4007847, at *2 (S.D. Miss. Aug. 2, 2019). As such, he did not exhaust his

---

[6] Young's allegation in his complaint that he did not sign for the rejections is refuted by Exhibits "A" and "B."

[7] Young's June 22, 2024, grievance was submitted after he had filed the instant suit; as such, it did not meet the PLRA requirement of exhausting administrative remedies before filing suit.

administrative remedies regarding his claims of assault against defendant Delon Douglas, and the instant case will be dismissed without prejudice for that reason.

## Conclusion

For the reasons set forth above, the motion [29] by the defendant for summary judgment will be granted; the plaintiff's motions [32], [36] for summary judgment will be denied, and the instant case will be dismissed without prejudice for failure to exhaust administrative remedies. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 2nd day of May, 2025.

/s/ Jane M. Virden
UNITED STATES MAGISTRATE JUDGE